**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| EUNICE ROMAN, et al., | : | |
| | : | |
| Plaintiffs, | : | |
| | : | Civ. No. 23-2811 (CCC) (AME) |
| v. | : | |
| | : | |
| COUNTY OF HUDSON, et al., | : | **OPINION** |
| | : | |
| Defendants. | : | |
| | : | |

**CLAIRE C. CECCHI, U.S.D.J.**

**I.     INTRODUCTION**

This action arises from the suicide of Albert Roman while incarcerated at Hudson County Correctional Center ("HCCC") in May 2021.  ECF No. 18 (amended complaint).  The plaintiffs—Eunice Roman, individually and as administrator of the Estate of Albert Roman, and the Estate of Albert Roman ("Plaintiffs")—allege the following defendants are liable pursuant to 42 U.S.C. § 1983 and various state laws for Roman's death:  Hudson County, Ronald Edwards, Sgt. Sean O'Leary, Dennis Sandrock, Alejandro Mendez, Officer Cesar Beltran, Nicholas Manfredi, WellPath Medical Service ("WellPath"), John and Jane Does 1–10, and ABC Companies 1–10 (collectively, "Defendants").  *Id.* at 2–4 ¶¶ 6–14.

Before the Court are the motions to dismiss of Hudson County (ECF Nos. 32, 34); WellPath (ECF No. 37); Edwards, the director of HCCC during the relevant time (ECF No. 33); and Officer Beltran (ECF No. 38) (Edwards and Beltran are referred to herein as the "Individual Defendants," and, collectively with Hudson County and WellPath, as the "Moving Defendants").  For the reasons that follow, the motions will be granted; the claims against the Moving Defendants will be dismissed without prejudice; and Plaintiffs will be permitted to amend their complaint.

## II.   BACKGROUND

### A.  The Amended Complaint

For purposes of this decision, the Court accepts the following factual allegations as true.

#### 1.  Albert Roman's Medical History and Detention at HCCC

Albert Roman was Eunice Roman's husband.  ECF No. 18 at 7–8 ¶ 1.  In November 2020, Albert[1] was arrested for domestic violence and detained at HCCC.  *Id.* at 7–8 ¶ 20.  The incident that led to the arrest allegedly arose out of Albert's "frustration of being unable to work or physically function properly due to pain and disabilities caused by the aftermath of a motor vehicle collision he suffered in October 2016."  *Id.* at 7–8 ¶ 20.  "Due to his persistent pain and inability to function physically or to be productive in his job as a project manager, [he] suffered from, and was diagnosed with, PTSD."  *Id.* at 8 ¶ 20.  From "2016 through 2021, [he] was treated for his motor vehicle injury and underwent lumbar spinal interbody fusion surgery, with no material effect."  *Id.* at 78.  Between November 2020 and May 2021, defendant Sandrock and unnamed doctors and nurses assigned to HCCC also provided medical services to Albert.  *Id.* at 22–23 ¶ 78.

Albert committed suicide on May 26, 2021.  *Id.* at 5 ¶ 18.  The following day, "Eunice Roman went to [HCCC] and sought information and records."  *Id.* at 13 ¶ 32.  Defendant Sgt. O'Leary told her that (1) "Mr. Roman had been very upset at the judge [presiding over the prior action], antagonistic with everyone, and antagonistic to the judge" and (2) he had no further information to provide, but would keep Eunice informed as events developed, and would provide her with reports as they became available.  *Id.*

Plaintiffs allege that during Albert's pre-trial detention, from November 2020 through May 2021, Defendants knew (1) he was psychologically impaired "based upon his interactions with the

---

[1] Albert Roman and Eunice Roman are referred to by their first names to avoid confusion.

jail administrators, jail staff, as well as the court staff, with 'verbal altercations' and/or outbursts" (*id.* at 8 ¶ 21); (2) he "suffered from PTSD, had suffered from pain medicine dependency, was antagonistic, and felt victimized, and was suicidal" (*id.* at 13 ¶ 31); (3) "his mental health had significantly diminished" and he "was in need of immediate mental health care and treatment (*id.* at 13 ¶ 33); and (4) "he needed to be removed from the general population and placed in the medical ward and observed and supervised until he attained normalcy" (*id.*).

## 2. Publications Regarding Albert's Death and HCCC

Albert death was reported in two online news articles.  ECF No. 18 at 5–7 ¶¶ 18, 19.  On May 27, 2021, nj.com reported that Albert was the first suicide at HCCC since 2018, and that "Hudson County Department of Corrections Director Ronald Edwards said the suicide was 'unexpected' and . . . Roman had not been on suicide watch."  *Id.* at 5–6 ¶ 18.  The article also reported:

> Between 2013 and 2018, the jail saw a spate of deaths, at least four of which were suicides.
>
> In the wake of those deaths, the county canceled its contract with the jail's health care provider and embarked on a multimillion-dollar slate of renovations to the facility, which involved the installation of anti-suicide measures in cells, bathrooms, and common areas.
>
> Edwards said the measures had been "extremely effective in thwarting or preventing" suicides overall.

*Id.* at 6 ¶ 18 (citing nj.com/hudson/2021/05/hudson-county-jail-inmate-dies-in-apparent-suicide-the-first-since-2018.html).  On May 28, 2021, a website called "TAPintoJerseyCity" also reported that Roman's death "was the first suicide at the facility since 2018," explaining:

> Hudson County officials terminated its contract with the company overseeing the health of prisoners and then implemented new programs after four suicides during a six-month stretch from 2017 to 2018[.] The board took a number of steps, includ[ing] reconstructing cells to allow better oversight of the prisoners, altering information taken when prisoners are brought in to alert the staff of risk of suicide, and establishing [a] rigorous new mental health evaluation program.

*Id.* at 6–7 ¶ 19 (citing tapinto.net/towns/jersey-city/sections/law-and-justice/articles/suicide-victim-at-hudson-county-correctional-facility-was-to-be-sentence-next-week-county-spokesman-says).

HCCC is a member of, and accredited by, the National Commission on Correctional Health Care ("NCCHC"). ECF No. 18 at 9 ¶ 26. "[T]he National Corrections Standards require the provision of timely care for serious medical needs, including an initial medical screening, including mental health screening; provision of necessary medications; specialty health care; frequent treatment and follow-up for chronic conditions; and communication between facility administrators and health care providers regarding the health needs of inmates and detainees." ECF No. 18 at 9 ¶ 27. In 2019, the NCCHC published its "Suicide Prevention Resource Guide: National Response Plan for Suicide Prevention in Corrections" (the "Suicide Prevention Guide" or the "Guide"). *Id.* at 10 ¶ 28. The Guide includes two case studies from member correctional institutions across the United States, one of which is about HCCC. *Id.* (citing Exhibit 1 to the complaint, ECF No. 1-1 (Suicide Prevention Guide)).

Among other things, the case study noted "[s]ix deaths in nine months – four of them suicides – at Hudson County Correctional Center." [2] ECF No. 1-1 at 36–37. The study went on to report a finding from Defendant Director Edwards that "90% of the people entering the facility had a mental health and/or substance abuse issue, and all of the individuals to recently die by suicide had had such problems." *Id.* The study indicated that Defendant Edwards "convene[d] an informal task force with medical, mental health, and corrections personnel, as well as advisors from the community" who "met monthly to brainstorm on solutions and develop plans." *Id.*

---

[2] This sentence refers to "four suicides during a one[-]year span from 2017 to 2018." ECF No. 18 at 12 ¶ 29 (quotations omitted).

Finding the facility was "ill-equipped to handle the needs" of inmates with complex mental health issues, "the jail built a modern medical housing unit with a variety of cells/beds for infirmary care and other special needs." *Id.* The study noted that "[s]uicide prevention was integral to the design of the 54-bed unit." *Id.* In connection with this investment, HCCC made safety updates to inmate cells, equipped suicide observation cells with "a camera with monitors at the nurses station and custody control room," and relocated nurses to the medical housing unit. *Id.* Defendant Edwards retained a mental health director who "developed separate training modules geared to mental health staff and to nursing staff," and "switched to a new health services vendor" for the jail. *Id.*

### B. Procedural History

Plaintiffs initiated this action in May 2023 (ECF No. 1) and filed the operative amended complaint in July 2023 (ECF No. 18). Based on the allegations above, they assert the following federal causes of action pursuant to 42 U.S.C. § 1983: (1) deliberate indifference to medical need as against all defendants arising out of their "adopt[ion] and administ[ration] [of] a policy, custom and/or practice of providing inadequate medical care at [HCCC]" (Count One) (ECF No. 18 at 13–15 ¶¶ 34–41); (2) deliberate indifference to jail safety as against all defendants arising out of their failure "to monitor and supervise the inmate cell within which Albert Roman was detained" (Count Two) (*id.* at 15 ¶¶ 42–45); (3) a *Monell* claim against Hudson County arising out of its alleged failure to monitor the "new jail medical service provider" (Count Three) (*id.* at 16–17 ¶¶ 46–51); and (4) a second *Monell* claim against Hudson County arising out of its alleged failure to "properly staff and operate the jail's medical service group" (Count Four) (*id.* at 17–19 ¶¶ 52–58).

Plaintiffs also assert the following state law claims pursuant to 28 U.S.C. § 1367(a): (1) a claim under the New Jersey Tort Claims Act ("NJTCA") for negligent management of a detainee

against all defendants except WellPath (Count Four[3]) (*id.* at 19–21 ¶¶ 59–65); (2) an NJTCA claim for negligent training and supervision against all defendants except WellPath (Count Five) (*id.* at 21 ¶¶ 66–67; (3) an NJTCA claim for negligent mental health assessment and treatment against all defendants except WellPath (Count Six) (*id.* at 21–22 ¶¶ 68–69); (4) a New Jersey Wrongful Death Act claim against all defendants (Count Seven) (*id.* at 22 ¶¶ 70–72); (5) a New Jersey Survival Act claim against all defendants (Count Eight) (*id.* at 22 ¶¶ 73–75); (6) a medical malpractice claim against Sandrock and WellPath (Count Nine) (*id.* at 22–23 ¶¶ 76–81); and a negligence claim against Sandrock and WellPath (Count Ten) (*id.* at 23–24 ¶¶ 82–84).

Defendants Hudson County, Edwards, WellPath, and Beltran have moved to dismiss the amended complaint.  ECF Nos. ECF Nos. 32 and 34 (Hudson County), 33 (Edwards), 37 (WellPath), and 38 (Beltran).  Plaintiffs opposed the motions (ECF Nos. 43, 44, 51), and Edwards, WellPath, and Beltran replied (ECF Nos. 48, 56, 57).

## III.   LEGAL STANDARD

A motion under Rule 12(b)(6) requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief" against the Moving Defendants "that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted); *see also Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).  "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"  *Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 308 n.3 (3d Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678).  "[A] pleading that offers 'labels or conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  *Iqbal*, 556 U.S. at 678 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S.

---

[3] This is the second "Count Four" in the amended complaint.  The first Count Four is the *Monell* claim against Hudson County for failure to staff and operate the jail's medical services group.  ECF No. 18 at 17.

544, 555 (2007)).  A court need not "accept unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation."  *Castleberry v. STI Grp.*, 863 F.3d 259, 263 (3d Cir. 2017) (quotation marks omitted).  In other words, a "presumption of truth attaches only to those allegations for which there is sufficient factual matter to render them plausible on their face."  *Schuchardt v. President of the U.S.*, 839 F.3d 336, 347 (3d Cir. 2016) (internal quotations and brackets omitted).

"Conclusory assertions of fact and legal conclusions are not entitled to the same presumption."  *Id.*; *see also Iqbal*, 556 U.S. at 678 (finding complaint need not contain "detailed factual allegations" to survive a motion to dismiss, but must contain "more than an unadorned, the-defendant-unlawfully-harmed-me  accusation").    A  complaint  that  provides  facts  "merely consistent with" the defendant's liability "stops short of the line between possibility and plausibility" and will not survive Rule 12(b)(6) review.  *Id.* (quoting *Twombly*, 555 U.S. at 557).

## IV.  DISCUSSION

### A.  Constitutional Claims

#### i.    Relevant Section 1983 Standards

Section 1983 is the vehicle by which private citizens may seek redress for state officials' violations of federal constitutional rights.  *See* 42 U.S.C. § 1983; *see also Gonzaga Univ. v. Doe*, 536 U.S. 273, 284–85 (2002) ("Section 1983 is not a source of substantive rights, but merely a method to vindicate violations of federal law committed by state actors.").  Section 1983 provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.  "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."[4]  *West v. Atkins*, 487 U.S. 42, 48 (1988)).

A Section 1983 action against an individual defendant such as Defendant Officer Beltran requires a showing that the defendant had "personal involvement" in the violation of a plaintiff's rights, and it cannot be predicated upon *respondeat superior*.  *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988); *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005).

A supervisor like Defendant Edwards may not be held vicariously liable for the actions of subordinates under Section 1983.  *See, e.g.*, *Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 222 (3d Cir. 2015).  Rather, to assert a plausible Section 1983 claim against a supervisor, a plaintiff must plead facts which, if proven, would show that the supervisor was personally involved in the alleged wrongs.  *Rode*, 845 F.2d at 1207–08. This can generally be done in one of two ways. First, a supervisor can be liable if he or she enacted a policy, practice, or custom that was the "moving force" behind an alleged constitutional violation.  *See City of Canton v. Harris*, 489 U.S. 378, 389 (1989); *Los Angeles Cty. v. Humphries*, 562 U.S. 29, 35–36 (2010).  Second, a supervisor may be held liable if he or she "participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations."  *A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004).  Knowledge, for these purposes, means "contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents." *C.H. ex rel. Z.H. v. Oliva*, 226 F.3d 198, 202 (3d Cir. 2000).  "Allegations of participation or actual knowledge and acquiescence . . .

---

[4] The Moving Defendants do not dispute their status as state actors for purposes of Section 1983.

must be made with appropriate particularity." *Rode*, 845 F.2d at 1207.  A mere hypothesis that an individual defendant had personal knowledge of or involvement in the deprivation of a plaintiff's rights is insufficient to establish personal involvement.  *See id.* at 1208; *see also Payne v. Butts*, No. 21-2210, 2022 WL 16916347, at *1 (3d Cir. Nov. 14, 2022).

A private or government healthcare provider like WellPath also cannot be held liable under Section 1983 for the unconstitutional acts of its employees under a theory of *respondeat superior*. *See Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 583–84 (3d Cir. 2003).  Rather, a healthcare provider is subject to liability only if it "had a policy or custom that caused [the] deprivation of a constitutional right." *Defreitas v. Montgomery Cty. Corr. Facility*, 525 F. App'x 170, 176 (3d Cir. 2013) (citing *Monell v. N.Y. City Dept. of Soc. Servs.*, 436 U.S. 658, 693–94 (1978)); *see also Perry v. Well-Path*, No. 20-2542, 2021 WL 229398, at *4 (E.D. Pa. Jan. 22, 2021) ("[T]o hold a private health care company like Well-Path liable for a constitutional violation under § 1983, a prisoner must allege the provider had 'a relevant . . . policy or custom, and that the policy caused the constitutional violation [he] allege[s].") (internal citation omitted). Likewise, Hudson County may be subject to liability under Section 1983 if Plaintiffs are able to identify a policy or custom that was the proximate cause of their injuries. *Est. of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (finding proximate cause may be shown by demonstrating "an affirmative link between the policy or custom and the particular constitutional violation" alleged) (quotations omitted); *see also Monell*, 436 U.S. at 694.  To satisfy this pleading standard, a plaintiff "must identify a custom or policy, and specify what exactly that custom or policy was." *McTernan v. City of York, Pa.*, 564 F.3d 636, 658 (3d Cir. 2009).  Causation can be established by demonstrating that the policy or custom is facially unconstitutional or "by

demonstrating that the municipal action was taken with deliberate indifference as to its known or obvious consequences." *Berg v. Cty. of Allegheny*, 219 F.3d 261, 276 (3d Cir. 2000).

Section 1983 claims against Hudson County and WellPath may also be premised on a failure to properly train, supervise, or discipline employees. *See Reitz v. Cnty. of Bucks*, 125 F.3d 139, 145 (3d Cir. 1997) ("[I]n the absence of an unconstitutional policy, a municipality's failure to properly train its employees and officers can create an actionable violation . . . under § 1983."). Liability under a "failure to train" theory requires "a plaintiff to identify a failure to provide specific training that has a causal nexus with his or her injury and must demonstrate that the failure to provide that specific training can reasonably be said to reflect a deliberate indifference to whether constitutional deprivations of the kind alleged occur." *Palakovic v. Wetzel*, 854 F.3d 209, 233 (3d Cir. 2017) (quoting *Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1030 (3d Cir. 1991)) (internal quotation marks omitted).  Specifically, in prison suicide cases, a plaintiff must "(1) identify specific training not provided that could reasonably be expected to prevent the suicide that occurred and (2) demonstrate that the risk reduction associated with the proposed training is so great and so obvious" that failing to offer it "can reasonably be attributed to a deliberate indifference to whether the detainees succeed in taking their lives." *Id.*

"A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train." *Connick v. Thompson*, 563 U.S. 51, 62 (2011) (quoting *Board of Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 409 (1997)) (quotation marks omitted).  A policymaker's "continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of their action—the deliberate indifference—necessary to trigger . . . liability." *Id.*  Such a pattern of similar constitutional

violations puts the policymaker on notice that its training "is deficient in a particular respect," and without notice, "decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." *Id.*

### ii.   Deliberate Indifference

Plaintiffs allege Defendants are liable for deliberate indifference to Albert's serious medical need (Count One) and jail safety (Count Two). The Court presumes the latter is a claim for deliberate indifference to risk of suicide for which, as explained below, a particular framework applies. Plaintiffs also assert *Monell* claims against Hudson County for (1) failing to monitor HCCC's "medical service provider group" (Count Three) and failing to properly staff and operate HCCC's "medical service group" (Count Four).[5] ECF No. 18 at 17 ¶ 50, 19 ¶ 57.

### 1.   Deliberate Indifference to Serious Medical Need

To plead a violation of the constitutional right to adequate medical care, Plaintiffs must plausibly allege (1) a serious medical need, and (2) acts or omissions by prison officials that indicate deliberate indifference to that need. *Natale*, 318 F.3d at 582; *see also Estelle v. Gamble*, 429 U.S. 97, 104 (1976). A particular vulnerability to suicide is one type of serious medical need. *See Palakovic*, 854 F.3d at 227. Acting with deliberate indifference to a serious medical need amounts to "recklessly disregard[ing] a substantial risk of harm." *Giles v. Kearney*, 571 F.3d 318, 330 (3d Cir. 2009). "In the detainee-suicide context, this claim concerns alleged inadequacies in mental-health treatment leading up to the suicide and is distinct from and broader than any

---

[5] Although Plaintiffs plead it as such, *Monell* liability is not a stand-alone cause of action; rather "*Monell . . .* is simply a decision clarifying how liability for constitutional violations can attach to municipal bodies under Section 1983." *Thompson v. City of Williamsport*, No. 22-1159, 2023 WL 8005306, at *4 (M.D. Pa. Nov. 17, 2023). It is unclear whether Plaintiffs intend for their allegations against Hudson County to support their claim for deliberate indifference to Albert's serious medical need claim, deliberate indifference to risk of suicide claim, both claims, or some other claim of a constitutional violation. Nevertheless, the Court will analyze Hudson County's liability under both the deliberate indifference to serious medical need and risk of suicide claims.

deliberate-indifference claim arising from the suicide itself." *McCracken v. Fulton Cnty.*, No. 19-1063, 2020 WL 2767577, at *4–7 (M.D. Pa. May 28, 2020) (citing *Palakovic*, 854 F.3d at 227).[6]

 In support of their claim that Defendants were deliberately indifferent to Albert's serious medical need, Plaintiffs allege that (1) "Defendants and each of them adopted and administered a policy, custom and/or practice of providing inadequate medical care at the Hudson County Jail"; and (2) "Defendants and each of them failed, refused, and willfully disregarded Albert Roman and therefore disregarded his medical needs by their deliberate indifference to the person and to his medical needs." ECF No. 18 at 14–15 ¶ 39. These allegations cannot withstand the Moving Defendants' motions to dismiss this claim for several reasons.

### a. Plaintiffs' Conclusory Allegations

 At the outset, Plaintiffs fail to connect the Defendants, including the Moving Defendants, to the alleged wrongdoing in a manner sufficient to put them on notice of what each is alleged to have done. The amended complaint asserts the deliberate indifference to serious medical need claim against every Defendant,[7] yet fails to "specify[ ] which of the defendants are responsible for which acts or omissions." *Radhakrishnan v. Pugliese*, No. 20-220, 2021 WL 11593799, at *1 (D.N.J. May 21, 2021) (citations omitted); *see also McLeod v. Fifth Jud. Dist. of Pa.*, No. 20-1362, 2022 WL 13986832, at *2 (D.N.J. Oct. 24, 2022) ("[S]everal Defendants are named but not

---

[6] "[C]ourts have recognized that causes of action for failure to provide adequate medical care and vulnerability to suicide can coexist." *Kinney v. Cnty. of Berks*, No. 22-2566, 2023 WL 3868379, at *5 (E.D. Pa. June 6, 2023) (citing *DeJesus v. Del. through Del. Dep't of Corr.*, 833 F. App'x 936, 940 (3d Cir. 2020)).

[7] Plaintiffs assert this claim against Hudson County; WellPath; Defendant Edwards, director of HCCC during the relevant time; Defendant O'Leary, "Section Head" of "the section of the jail [where] Roman was detailed"; Defendant Sandrock, head of medical support within HCCC; Defendant Mendez, "agent of Hudson County who was involved in the care and safety of inmates" at HCCC; Defendant Beltran, "agent of Hudson County who was involved in the care and safety of inmates" at HCCC; Defendant Manfredi, "agent of Hudson County who was involved in the care and safety of inmates" at HCCC; and John and Jane Does 1–10, "natural persons . . . whose true identities and involvements in Albert Roman's care and death at Hudson County Jail are unknown." *Id.* at 2–4 ¶¶ 6–14.

mentioned throughout any of the Complaint's factual allegations.  As such, the Complaint does not 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.") (internal citation omitted); *Darby v. N.J. Dep't of Corr.*, No. 20-1360, 2023 WL 6890911, at *4 (D.N.J. Oct. 19, 2023) ("This type of pleading against 'Defendants' leaves Defendants and the Court unable to discern which allegations apply to any of them individually and is prohibited.").

Further, without specifying a particular policy or custom, Plaintiffs allege that all of these defendants "adopted and administered a policy, custom and/or practice of providing inadequate medical care at the Hudson County Jail," and also "failed, refused, and willfully disregarded Albert Roman and therefore disregarded his medical needs by their deliberate indifference to the person and to his medical needs."  ECF No. 18 at 14–15 ¶ 39.  This amounts to improper group pleading. *See Thompson*, 2023 WL 8005306, at *8 ("A Section 1983 plaintiff [ ] cannot survive dismissal through 'conclusory allegations against defendants as a group.'  An adequate allegation cannot, where multiple defendants 'occupy different positions and presumably have distinct roles in the alleged conduct,' engage in 'impermissibly vague group pleading;' it must instead specify 'which defendants engaged in what wrongful conduct.'"); *McLeod*, 2022 WL 13986832, at *2 ("Group pleadings are insufficient to sustain a claim as a matter of law.").  The amended complaint fails to specify which Defendant is responsible for which act or omission; thus, it fails to put each Defendant, including the Moving Defendants, on notice of the alleged actions on which his or her liability is based.  *See, e.g.*, *Aruanno v. Main*, 467 F. App'x 134, 137–38 (finding dismissal of a Section 1983 action appropriate where defendants were collectively sued as "[government] personnel" and plaintiff failed to allege the individual defendants' personal involvement).

Next, in addition to the group pleading problem, Plaintiffs fail to allege a factual basis to support their conclusory allegations.  Facially, the amended complaint does not articulate a

plausible claim for relief against any defendant, including the Individual Defendants, under a theory of personal involvement, as the allegations are made without particularity.  Plaintiffs' assertions that Defendants (1) "knew that Albert Roman suffered from PTSD, had suffered from pain medicine dependency, was antagonistic, and felt victimized, and was suicidal (ECF No. 18 at 13 ¶31); (2) "knew that Albert Roman's mental state and his mental health had significantly diminished and therefore Albert Roman was in need of immediate mental health care and treatment (*id.* at ¶ 33); and (3) "knew that he needed to be removed from the general population and placed in the medical ward and observed and supervised until he attained normalcy" (*id.*) are conclusory, contain no facts supporting an inference of Defendants' knowledge, and therefore cannot be credited.  *See, e.g.*, *McCracken*, 2020 WL 2767577, at *6 (dismissing deliberate indifference claims where "the amended complaint offers only a bare assertion that they 'knew or should have known that [plaintiff]  had just attempted suicide, and was a serious risk of suicide'" (citation omitted)).  Plaintiffs also do not assert that any Defendant, including the Moving Defendants, directed others to violate Albert's rights, and to the extent the amended complaint alleges any Defendant's knowing acquiescence to misconduct, Plaintiffs fail to provide a factual basis for that inference as well.

### b.  Allegations of Supervisory Liability

Further, Plaintiffs' allegation that Defendants "adopted" a policy or custom of "inadequate medical care" (ECF No. 18 at 15 ¶ 39) is too vague and conclusory to provide a basis for supervisory liability.  Plaintiffs must instead identify a specific policy or practice that was the "moving force" behind the alleged constitutional violation, *see City of Canton*, 489 U.S. at 389; *Humphries*, 562 U.S. at 35–36, and plausibly allege that (1) the existing policy or practice created an unreasonable risk of Eighth Amendment injury; (2) the supervisor was aware that the

unreasonable risk was created; (3) the supervisor was indifferent to that risk; and (4) the injury resulted from the policy or practice. *Michaux v. Temas*, No. 17-1241, 2020 WL 3799755, at *18. They have not done so here.  Moreover, to the extent Plaintiffs allege supervisory liability on the basis of a supervisor-defendant's failure to supervise, train, or discipline subordinates, Plaintiffs must plausibly allege "that there was an actual constitutional violation at the hands of subordinates." *Brown v. Smith*, No. 21-3127, 2022 WL 2383609, at *3 n.4 (3d Cir. July 1, 2022) (citing *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *rev'd on other grounds*, *Taylor v. Barkes*, 575 U.S. 822 (2015); *Santiago v. Warminster*, 629 F.3d 121, 130 (Dec. 14, 2010). As explained above, Plaintiffs have not so alleged.

### c.  Plaintiffs' *Monell* Liability Claims

Plaintiffs have also not plausibly alleged *Monell* liability against WellPath or Hudson County for the alleged deliberate indifference to Albert's serious medical need because the amended complaint (i) fails to identify a particular custom or policy of WellPath or Hudson County, *see McTernan*, 564 F.3d at 658; and (ii) plausibly allege that such custom or policy caused the constitutional violations alleged. *Est. of Roman*, 914 F.3d at 798; *see also Collins v. Borough of Trainer*, No. 13-7613, 2014 WL 2978312, at *5 (E.D. Pa. July 1, 2014) (finding that complaint failed to state a *Monell* claim where plaintiff merely alleged that "Defendants developed and maintained policies, practices, procedures and customs exhibiting deliberate indifference to the Constitutional rights of persons . . . which caused violations of Plaintiff's constitutional and other rights as aforesaid"); *Mirra v. Fynes*, No. 13-1677, 2014 WL 716692, at *7 (E.D. Pa. Feb. 25, 2014) (dismissing *Monell* claim and finding that plaintiff failed to include sufficiently specific allegations setting forth a Township policy or custom, or specific failure to train, which led to the alleged constitutional violations).

Indeed, to the extent there are specific policies or customs referenced in the complaint, they are the policies identified in the 2019 Suicide Prevention Guide HCCC case study that, according to the study, led to improved crisis assessment and intervention.  *See*, *e.g.*, ECF No. 1-1 at 36 ("Edwards and his team identified numerous changes aimed at transforming the culture around inmate health care as a whole, not only suicide prevention."), 37 ("Edwards brought in Dennis Sandrock, PhD, CCHP, regional mental health director of the jail's health services vendor at the time . . . .  Sandrock reviewed and strengthened policies, procedures, and training on suicide prevention, and developed separate training modules geared to mental health staff and to nursing staff. . . .  The jail switched to a new health services vendor, and Edwards says the buy-in to the suicide-prevention culture was immediate.  He points to several cases where suicide was averted due to efforts by staff."); *see also* ECF No. 18 at 6 ¶ 18 ("Between 2013 and 2018, the jail saw a spate of deaths, at least four of which were suicides.  In the wake of those deaths, the county canceled its contract with the jail's health care provider and embarked on a multimillion-dollar slate of renovations to the facility, which involved the installation of anti-suicide measures in cells, bathrooms, and common areas." (quoting May 27, 2021, nj.com article)), 7 ¶ 19 (same (quoting May 28, 2021, TAPintoJerseyCity article)).

Additionally, to the extent Plaintiffs allege that the suicides referenced in the 2019 Suicide Prevention Guide demonstrate a custom or a pattern of past violations, this allegation cannot support a claim for *Monell* liability.  The suicides referenced in the Guide occurred (1) approximately three years before Albert's death, (2) before the policy and operational changes referenced in the HCCC case study, and (3) during a time when a medical provider other than WellPath was servicing HCCC.  *See* ECF No. 18 at 10–12 ¶¶ 28–29.  On these facts, Plaintiffs fail to demonstrate a custom or pattern of past violations sufficient to implicate *Monell* liability.

16

Plaintiffs' allegations that Hudson County is liable for failing to monitor HCCC's "medical service provider group" and failing to properly staff and operate HCCC's "medical service group" (ECF No. 18 at 17 ¶ 50, 19 ¶ 57) are also too conclusory to support a viable claim against Hudson County for deliberate indifference to Albert's serious medical need. Plaintiffs make general statements about unspecified policies and alleged events that they fail to connect to the alleged harm. *See* ECF No. 18 at 16 ¶ 49 ("The new medical service provider . . . failed to adhere to the policies, standards, and guidelines applicable to jail operators and jail medical service providers."), 17 ¶ 50 ("Hudson County failed to monitor the new group to measure its compliance and adherence to the applicable standards and to whether or not improvements were actually being implemented."), 18 ¶ 55 (HCCC's revenue declined between 2019 and 2020, and during this period, (1) "the contract [with] CFG Health Systems was 'cancelled'"; (2) "during the 'transition' to CFG Health System's substitutes, Hudson County felt no urgency to make the 'improvements' deemed necessary in 2018-19"; and (3) "Hudson County sought to reduce its jail operating expenses including its payments to the outsourced medical service providers"), 19 ¶ 57 ("When revenues [at HCCF] decreased, medical care and services decreased. Hudson County's failure to properly staff and operate the jail's medical service group . . . resulted in the lack of availability of proper medical service.").

The amended complaint also does not sufficiently allege how the monitoring and staffing were allegedly inadequate, or plausibly assert a link between those deficiencies and the harm alleged. *See*, *e.g.*, *Robinson v. Fair Acres Geriatric Ctr.*, 722 F. App'x 194, 199 (3d Cir. 2018) (noting that the plaintiff "failed to cite any cases in which *Monell* liability was assessed based on a municipality's failure to hire a sufficient number of staff" and "failed to sufficiently allege a link between [the defendants'] hiring practices and the injuries she sustained"); *Beers v.*

*Northumberland Cnty.*, No. 22-1101, 2023 WL 4827082, at \*6–7 (M.D. Pa. July 27, 2023) ("This Court doubts that the failure to sufficiently staff is an adequate basis for *Monell* liability.") (quoting *Robinson*, 722 F. App'x at 199); *see also Thompson*, 2023 WL 8005306, at \*9 (rejecting similar allegations as conclusory). Further, Plaintiffs fail to allege any incidents that would or should have given Defendants notice of the deficiencies. In short, Plaintiffs' allegations regarding Hudson County are an insufficient basis upon which to find a plausibly alleged claim for deliberate indifference to risk of suicide against it.

As Plaintiffs have employed improper group pleading and failed to provide a factual foundation to support their allegation of a constitutional violation, the Court cannot find that Plaintiffs have plausibly alleged a claim for deliberate indifference to serious medical needs. Thus, the Moving Defendants' motions to dismiss this claim pursuant to Rule 12(b)(6) will be granted.

### 2. Deliberate Indifference to Risk of Suicide

When a plaintiff seeks to hold prison officials or medical staff accountable for failing to prevent a prison suicide, the "vulnerability to suicide" framework applies. This framework "is simply a more specific application of the general rule set forth in [*Estelle*, 429 U.S. at 104]," which "requires that prison officials not be deliberately indifferent to the serious medical needs of prisoners." *Palakovic*, 854 F.3d at 222. "In essence," as explained above, "a 'particular vulnerability to suicide' is just one type of 'serious medical need.'" *Id.* (quoting *Colburn*, 946 F.2d at 1023). To plead a claim under this framework, a plaintiff must allege "(1) the prisoner had a particular vulnerability to suicide, (2) the prison official knew of that vulnerability, and (3) the prison official acted with deliberate indifference to that prisoner's vulnerability." *Shirey*, 2019 WL 1470863, at \*18 (citing *Palakovic*, 854 F.3d at 223-24 (3d Cir. 2017)).

Here, as with Plaintiffs' claim for deliberate indifference to serious medical needs, Plaintiffs improperly employ group pleading of the deliberate indifference to risk of suicide claim. Specifically, Plaintiffs allege that Defendants "failed to monitor and supervise the inmate cell within which Albert Roman was detained and these failures facilitated and caused, proximately and directly, Albert Roman's death." *Id.* at 15 ¶ 44. Plaintiffs' failure to specify which Defendant is responsible for which act or omission fails to put each Defendant on notice of the alleged actions on which his or her liability is based. *See Aruanno*, 467 F. App'x at 137–38. Thus, Plaintiffs' claim is subject to dismissal on this basis alone.

Plaintiffs also fail to satisfy the first, "vulnerability to suicide" prong. To satisfy this prong, Plaintiffs "must establish that there is a 'strong likelihood, rather than a mere possibility, that self-inflicted harm will occur.'" *McAndrew v. Northumberland Cnty.*, No. 22-834, 2023 WL 408905, at *3 (M.D. Pa. Jan. 25, 2023) (quoting *Hinton v. United States*, No. 14-854, 2015 WL 737584 at *5 (M.D. Pa. Feb. 20, 2015)). The only non-conclusory allegations asserted in the amended complaint relevant to this analysis are that Albert suffered from PTSD, and at some unspecified time, presumably in close proximity to his death, "[he] had been very upset at the judge, antagonistic with everyone, and antagonistic to the judge." ECF No. 18 at 4, 13 ¶¶ 20, 32. This is not a sufficient factual basis for a plausible allegation that Albert had a particular vulnerability to suicide, let alone that Defendants, including the Individual Defendants, knew of that vulnerability and acted with deliberate indifference to it. *Shirey*, 2019 WL 1470863, at *18.

Further, to the extent Plaintiffs intended to allege supervisory or *Monell* liability, they have not successfully done so. First, because the allegations lack particularity, the amended complaint does not articulate a plausible claim against any Defendant under a theory of personal involvement. Plaintiffs also do not assert that any Defendant directed others to violate Albert's rights, and to the

extent the amended complaint alleges any Defendant's knowing acquiescence to misconduct, Plaintiffs fail to provide sufficient factual matter for that inference as well.  Second, to the extent Plaintiffs assert that the alleged wrongdoing is the result of an unconstitutional policy or custom, the claim fails because Plaintiffs have not identified a specific policy or custom and linked it to the harm caused.  Finally, as explained above, Plaintiffs' allegations that Hudson County is liable for failing to monitor HCCC's "medical service provider group" and failing to properly staff and operate HCCC's "medical service group" (ECF No. 18 at 17 ¶ 50, 19 ¶ 57) are conclusory allegations that cannot support a viable claim against Hudson County.

Accordingly, the Court cannot find that Plaintiffs have plausibly alleged a claim for deliberate indifference to Albert's risk of suicide.  Thus, the Moving Defendants' motions to dismiss this claim pursuant to Rule 12(b)(6) will be granted.

### B.  Plaintiff's Discovery Argument

The Court notes Plaintiffs' argument that the motions should be denied because discovery had not yet begun.  *See* ECF No. 43 at 17.  However, this is not a basis to allow a deficient complaint to proceed.  *Evancho*, 423 F.3d at 354–55 (rejecting "conclusory, boilerplate" amended complaint even where discovery had not commenced, and noting that "a court is not required to assume that a plaintiff can prove facts not alleged"); *Morales*, 2023 WL 5003891, at *1 ("As an initial matter, the Court takes note of Plaintiff's suggestion that the Motion is premature because fact discovery has not yet taken place, but this does not preclude a review of the merits of the Motion.") (citation omitted), *reconsideration denied*, 2023 WL 6518178 (D.N.J. Oct. 5, 2023); *Thomas v. Ford Motor Co.*, 70 F. Supp. 2d 521, 524 (D.N.J. Nov. 18, 1999) (finding dismissal warranted "where, under any set of facts . . . the plaintiff is not entitled to relief.") (citations

omitted).  The Court further notes that discovery has begun and is ongoing.  *See* ECF No. 58 (pretrial scheduling order).

### C.  Supplemental Jurisdiction

As discussed above, Plaintiffs Section 1983 claims (Counts One through Four) will be dismissed as against the Moving Defendants.  Because the Court dismisses Plaintiffs' federal claims against the Moving Defendants, the Court declines to exercise supplemental jurisdiction over Plaintiffs' state law claims.  *See* U.S.C. § 1367(c)(3) (stating district court may decline to exercise supplemental jurisdiction over a claim if the court "has dismissed all claims over which it has original jurisdiction.").  The Court expresses no opinion as to the merits of Plaintiffs' state law claims.  The Court further notes that there are defendants who have not moved to dismiss Plaintiffs claims against them.  Plaintiffs should be aware that the deficiencies identified in this Opinion apply with equal force as to the claims against those non-moving defendants.

## V.   CONCLUSION

For the reasons set forth above, the Moving Defendants' motions to dismiss Plaintiffs' Section 1983 claims (ECF Nos. 32–34, 37, 38) will be granted and those claims will be dismissed without prejudice.[8]  The Court declines to exercise supplemental jurisdiction over the remaining state-law claims.  Plaintiffs will be given thirty (30) days to file a second amended complaint if they believe they can cure the deficiencies noted herein.  An appropriate Order follows.

DATED:  April 23, 2024

s/ Claire C. Cecchi
**HON. CLAIRE C. CECCHI, U.S.D.J.**

---

[8] Courts must generally grant leave to amend before dismissing a civil rights action if curative amendment is conceivable.  *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002).  Plaintiffs could plausibly cure the defects relative to their claims of deliberate indifference and vulnerability to suicide by presenting new factual allegations.  Thus, the Court will dismiss Counts One through Four as against the Moving Defendants without prejudice.